AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

UNITED STATES DISTRICT COURT
for the

EASTERN DISTRICT OF PENNSYLVANIA

In the Matter of the Seizure of )
)
FUNDS IN VANGUARD ) Case No. 21-mj-1723
ACCOUNT NO. 26215242 )
)
)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Special Agent Craig Clotfelter, a federal law enforcement officer, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the Eastern District of Pennsylvania and elsewhere is subject to seizure and forfeiture to the United States of America under 18 U.S.C. §§ 981(a)(1)(A) & 981(a)(1)(C), 982(a)(1), 981(b), 21 U.S.C. § 853(f), and 28 U.S.C. § 2461(c):

Any and all funds on deposit, securities held or other investment instruments located within Vanguard brokerage account number 26215242 in the name of Trenton Thomas.

The application is based on these facts:

See Affidavit of **Special Agent Craig Clotfelter, IRS-CI**
    X  Continued on the attached sheet.

/s/Craig Clotfelter
*Applicant's signature*

Special Agent Craig Clotfelter, IRS-CI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: November 10, 2021__

/s/David Strawbridge
*Judge's signature*

City and state:  Philadelphia, Pennsylvania

HON. DAVID R. STRAWBRIDGE
*Printed name and title*

21-mj-1723

## AFFIDAVIT IN SUPPORT OF
## SEARCH AND SEIZURE WARRANT

I, Craig Clotfelter, being duly sworn, depose and state as follows:

### INTRODUCTION

1.      I have been a Special Agent (SA) with the Internal Revenue Service, Criminal Investigation (IRS-CI) since 2009.

2.      On October 7, 2021, I was the affiant for an affidavit in support of an application for seizure warrants for various assets including, any and all funds from Vanguard brokerage account number 26215242 in the name of TRENTON THOMAS.

3.      On October 7, 2021, U.S. Magistrate Judge Renee H. Toliver of the Northern District of Texas, authorized the warrant to seize property subject to forfeiture, including the funds from Vanguard brokerage account number 26215242. The Affidavit in Support of the  Seizure Warrant signed on October 7, 2021 in the Northern District of Texas is incorporated and adopted as part of this affidavit at Attachment A.

4.      Vanguard was served with the Northern District of Texas seizure warrant but refused to honor the seizure warrant because it was not issued by a judge in the Eastern District of Pennsylvania.

Based upon my training and experience, and the information provided in this Affidavit, I respectfully submit that there is probable cause to

1

21-mj-1723

believe that from at least in or around April 2020 to September 2020, within this District and elsewhere, defendant TRENTON THOMAS and BONITA GREEN committed violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1956(a)(1)(B)(i) (Knowing Engaging in Financial Transactions with Proceeds from a Specified Unlawful Activity to conceal, disguise, location, source, ownership or control), 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) and 18 U.S.C. 1956(h) (Conspiring to Commit 1956(a)(1)(B)(i), 1957).  I also submit that there is probable cause to believe that all funds in Vanguard brokerage account number 26215242 are subject to seizure and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), 982(a)(1) and 28 U.S.C. § 2461(c).

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.


/s/Craig Clotfelter
Special Agent Craig Clotfelter
Internal Revenue Service-Criminal Investigation



Sworn to and subscribed before me this 10th day of November 2021.


/s/David Strawbridge
HON. DAVID R. STRAWBRIDGE
United States Magistrate Judge

2

# Attachment A

## AFFIDAVIT IN SUPPORT OF
## SEARCH AND SEIZURE WARRANTS

I, Craig Clotfelter, being duly sworn, depose and state as follows:

### INTRODUCTION

1.      I have been a Special Agent (SA) with the Internal Revenue Service,
Criminal Investigation (IRS-CI) since 2009. I am a graduate of the Federal Law
Enforcement Training Center and the National Criminal Investigator Training
Academy at Glynco, Georgia, where I received training on interviewing, search and
arrest warrants, defensive tactics, and firearms. In addition, I received training on
tax cases, money laundering, and tax-related cases. Throughout the course of my
career, I have conducted an array of criminal investigations involving wire fraud,
bank fraud, money laundering, identity theft and other illegal schemes affecting
financial institutions.  I have experience conducting search, seizure, and arrest-
warrant operations, as well as surveillance and witness interviews.  Since May
2017 I have been the Asset Forfeiture Coordinator for the Dallas Field Office and
have attended both Basic and Advanced Asset Forfeiture Training programs at
Glynco, Georgia. This affidavit is based on my personal investigation and
investigation by others, including federal and local law enforcement officials whom
I know to be reliable and trustworthy.  The facts contained herein have been
obtained by interviewing witnesses, examining documents obtained during the
investigation, consulting with other law enforcement officials, as well as through
other means.  This affidavit does not include every fact known to me about this

1

investigation, but rather only those facts sufficient to establish probable cause. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all my knowledge or investigation into this case.

## PURPOSE OF THE AFFIDAVIT

2.     This affidavit is made in support of an application for seizure warrants for the following assets (the "SUBJECT ACCOUNTS") as further described below:

(i)     any and all funds on deposit in Wells Fargo Bank ("Wells Fargo") account number 3982973616 held in the name of Autumn Alyse Holdings LLC, up to and including the sum of one hundred thirty-six thousand, eight hundred sixteen dollars ($136,816.00) (hereafter WFB 3616);

(ii)     any and all funds on deposit in Wells Fargo account number 3826166682 held in the name of Harlie Alyse, Inc., up to and including the sum of three hundred twenty-nine dollars and thirty cents ($329.30) (hereafter WFB 6682);

(iii)     any and all funds on deposit in Wells Fargo account number 5597840692 held in the name of HMC Retail LLC, up to and including the sum of five hundred fifty-two thousand, four hundred ninety-six dollars and twenty nine cents ($552,496.29) (hereafter WFB 0692);

2

(iv)   any and all funds on deposit in Wells Fargo account number 921512753 held in the name of Henlee Addison Properties LLC, up to and including the sum of eighteen thousand, three hundred eighteen dollars and seventy-three cents ($18,318.73) (hereafter WFB 2753);

(v)   any and all funds on deposit in Wells Fargo account number 1216382885 held in the name of Trym Life, Inc., up to and including the sum of two thousand, four hundred fifty dollars and ninety-nine cents ($2,450.99) (hereafter WFB 2885);

(vi)   any and all funds on deposit in Wells Fargo account number 5842510579 held in the name of TRENTON J. THOMAS, up to and including the sum of fifty thousand, six hundred twenty-four dollars and forty-three cents ($50,624.43) (hereafter WFB 0579);

(vii)   any and all funds on deposit in Wells Fargo account number 8581629584 held in the name of Trenton J. Thomas, up to and including the sum of fourteen thousand, five hundred forty-six dollars and forty-four cents ($14,546.44) (hereafter WFB 9584);

(viii)   any and all funds on deposit in JP Morgan Chase bank ("JPMC") account number 633109852 held in the name of Strong Visuals Company LLC, up to and including the sum of ten thousand, three hundred seventy-nine dollars ad four cents ($10,379.04) (hereafter JPMC 9852);

3

(ix)     any and all funds on deposit in JPMC account number 586726769 held in the name of BONITA Y. GREEN, up to and including the sum of thirty-one thousand, nine hundred thirty dollars and ninety-five cents ($31,930.95) (hereafter JPMC 6769);

(x)     any and all funds on deposit, securities held or other investment instruments located within Charles Schwab brokerage account number 62422274 in the name of TRENTON and JANET THOMAS, (hereafter CS 2274);

(xi)     any and all funds on deposit, securities held or other investment instruments located within TD Ameritrade brokerage account number 493-938261 in the name of TRENTON THOMAS, (hereafter TDA 8261); and

(xii)     any and all funds on deposit, securities held or other investment instruments located within Vanguard brokerage account number 26215242 in the name of TRENTON THOMAS, (hereafter VAN 26215242).

3.     Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of seizure warrants, it does not include all the facts that I have learned during the course of this investigation. Where the

contents of documents and the actions and statements of others are reported herein,

they are reported only in substance and in part, unless otherwise indicated.

4.      As set forth below, there is probable cause to believe that the

SUBJECT ACCOUNTS are subject to seizure and forfeiture as follows:

Criminal Seizure and Forfeiture:

    a.  Pursuant to 18 U.S.C. §§ 981(a)(1)(C) 28 U.S.C. § 2461(c), because
the SUBJECT ACCOUNTS was derived from proceeds traceable to a
violation of 18 U.S.C. § 1343 (wire fraud).

    b.  Pursuant to 18 U.S.C. § 982(a)(1)(A) because SUBJECT
ACCOUNTS were involved in violations of 18 U.S.C. §§ 1956
and/or 1957, or are traceable to such property.

    c.  Consequently, seizure of the assets for criminal forfeiture is
authorized by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(f).

Civil Seizure and Forfeiture:

    a.  Pursuant to 18 U.S.C. § 981(a)(1)(C) because the assets were derived
from proceeds traceable to a violation of 18 U.S.C. § 1343 (wire
fraud).

    b.  Pursuant to 18 U.S.C. § 981(a)(1)(A) because the assets were
involved in a transaction or attempted transaction in violation of 18
U.S.C. §§ 1956 and/or 1957, or are traceable to such property.

5

    c.   Pursuant to 18 U.S.C. § 984 because the funds involved the offense were funds deposited to a financial institution within one year of the offense.

    d.   Consequently, seizure of the assets for civil forfeiture is authorized by 18 U.S.C. § 981(b).

Specifically, as more fully described below, there is probable cause to believe that Trenton Thomas violated Section 18 U.S.C. § 1343 by submitting false invoices to his employer, Energy Transfer (ET) using his father's company. These false invoices caused Energy Transfer to provide instructions to its bank at a Wells Fargo account located in Texas to remit funds via wire transfer to Bank of America's wire clearing operations in New York for deposit to the bank account for his father's company.

## STATUTORY AND REGULATORY FRAMEWORK

    5.   Pursuant to 18 U.S.C. § 981(a)(1)(A), all property, real or personal, involved in money laundering activity or attempted money laundering activity in violation of 18 U.S.C. § 1956 and/or 1957 is subject to forfeiture.

    6.   Pursuant to 18 U.S.C. § 981(a)(1)(C), "any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting "specified unlawful activity" (as defined in [18 U.S.C. §] 1956(c)(7), or a conspiracy to commit such offense" is subject to forfeiture to the United States.

6

7.      Pursuant to 18 U.S.C. § 1956(c)(7)(A), the term "specified unlawful activity" includes offenses listed in 18 U.S.C. § 1961(1).  Section 1961(1) includes wire fraud in violation of 18 U.S.C. § 1343.

8.      Pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f), as incorporated by 28 U.S.C. § 2461(c), this Court is empowered to issue a seizure warrant for any property subject to forfeiture under 18 U.S.C. § 981.  Pursuant to 18 U.S.C. § 981(b)(2), seizures pursuant to this section "shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure."  Similarly, pursuant to 21 U.S.C. § 853(f), seizures authorized pursuant to Section 853 shall be made through the "issuance of a warrant authorizing the seizure of property subject to forfeiture . . . in the same manner as provided for a search warrant."

9.      In any civil forfeiture action in which the subject property is cash deposited into a bank account, the government is not required to identify the particular funds involved in the offense, as any funds found in the same account within one year of the date of the offense are subject to forfeiture pursuant to 18 U.S.C. § 984.

## PROBABLE CAUSE

*Relevant Persons*

10.      TRENTON JARRELL THOMAS is a resident of Richmond, Texas (hereafter referred to as TRENTON THOMAS or THOMAS). THOMAS was a terminal supervisor for Energy Transfer, Inc. (hereafter referred to as ET), a Dallas-

7

based oil and gas company, from May of 2017 until his resignation in March of 2021.  THOMAS was originally hired by Sunoco Logistics on April 6, 2012 (bought by Energy Transfer, Inc. on January 14, 2018).  THOMAS oversaw the operation of seven terminals located in South Texas (6) and Louisiana (1).  In addition to oversight of operations, THOMAS had budgetary authority for the seven terminals.

11.    BONITA YVONNE GREEN (hereafter referred to as BONITA GREEN or GREEN) aka BONITA GREEN-GAMBRELL is a resident of Houston, Texas. BONITA GREEN is THOMAS' mother.

12.    Dyral Leon Thomas (hereafter referred to as Dyral Thomas) is a resident of Lockhart, Texas. Dyral Thomas is THOMAS's father.

13.    Person 1 is the Terminal Supervisor for ET's terminal facilities located in Staton, Texas. Person 1 also supervised the Hearne and Center, Texas facilities from December 2020 through March 2021.

14.    Person 2 is the Terminal Supervisor for ET's terminal facilities located in Sherington, Louisiana since 2017. Person 2 also became the terminal supervisor for the Arcadia, Louisiana terminal in 2018. In January 2019, Person 2 also became the terminal supervisor for the Waskom, Texas facility.

15.    Person 3 is the Terminal Supervisor for ET's terminal facilities located in Hearne and Center, Texas from April 2019 through September 2020.

16.    Person 4 is the Senior Security Director for ET.

17.    Person 5 is the Lead Investigator for ET.

8

*Relevant Entities*

18.     Energy Transfer, Inc. is a publicly traded oil and gas products
pipeline and infrastructure company established in 1996 headquartered out of
Dallas, Texas.

19.     Honeybadger Industrial Ltd.  (hereafter referred to as Honeybadger)
was formed with the Texas Secretary of State on October 31, 2018, with BONITA
GREEN listed as the Director. On December 2, 2019 an amendment was filed
changing the name of the entity to Harlie Alyse, Inc. On January 27, 2020 an
assumed name certificate was filed for Sparrow Hawk Construction for Harris
County. On June 2, 2021 a certificate of termination was filed.

20.     LT Services and Repair, Inc. (hereafter referred to as LT Services)
was formed with the Texas Secretary of State on May 27, 2019 with DYRAL
THOMAS as Director.  David Green was added as a Director on February 26,
2021. The company was voluntarily terminated on May 12, 2021.  Green is
believed to be a relative of TRENTON THOMAS

21.     HMC Retail, LLC (hereafter referred to as HMC Retail) was formed
with the Texas Secretary of State on March 7, 2019 with TRENTON THOMAS,
BONITA GREEN and Vincent Green as Managing Members.  Vincent Green is
believed to be the brother of TRENTON THOMAS.  On March 29, 2019 an
amendment was filed changing the addresses of the members from 700 Smith
Street #61070, Houston, Texas to 21723 Honeysuckle Grove Lane, Richmond,
Texas.

9

22.     Henlee Addison Properties, LLC (hereafter referred to as Henlee Addison) was formed with the Texas Secretary of State on June 24, 2019 with Autumn Alyse Holdings, LLC, and BONITA GREEN as Managing Members.

23.     Autumn Alyse Holdings, LLC (hereafter referred to as Autumn Alyse) was formed with the Delaware Secretary of State on November 4, 2016 file number 6203790. TRENTON THOMAS at 21723 Honeysuckle Grove Lane, Richmond, Texas was associated with this entity.

24.     Trym Life, LLC (hereafter referred to as Trym Life) was formed with the Texas Secretary of State on June 9, 2018 with TRENTON THOMAS as Manager listing an address of 21723 Honeysuckle Grove Lane, Richmond, Texas.

*Concealment Bank Accounts*

25.     Wells Fargo account 7888982597 was opened on November 9, 2018 in the name of Honeybadger Industrial Ltd. (hereafter WFB 2597). BONITA GREEN was listed as the sole owner on the account. The account application listed the industry as 'construction', the description of business as 'flipping houses' and the number of employees as '1'. TRENTON THOMAS was subsequently added as a signatory on the account on March 6, 2020. The account was closed on April 10, 2020 and the balance of funds of $61,170.86 was transferred to Wells Fargo account ending 6682 in the name of Harlie Alyse, Inc.

26.     Bank of America account 488086148980 was opened on February 8, 2019 in the name of L.T. Services and Repair, Inc. (hereafter BOA 8980). TRENTON THOMAS was the account owner and sole signatory on the account.

10

The account was closed on April 21, 2021 and a check was issued in the amount of $287.47 for the balance of funds in the account.

### Overview of the Fraudulent Scheme

*Honeybadger*

27.     On November 21, 2018, THOMAS emailed a new vendor account setup form for Honeybadger signed by BONITA GREEN, an authorization agreement for automatic deposits designating WFB 2597 as the account for deposit also signed by BONITA GREEN, a completed IRS Form W-9 signed by BONITA GREEN and a scanned image of a voided check for WFB 2597 to ET's Business Partner Support team.

28.     On December 27, 2018, THOMAS emailed a scanned invoice number 15222 to ET's Account Payable Department from Honeybadger dated December 6, 2018 and requested a payment in the amount of $41,530.00. The invoice listed details '550 gal. Tank 59.75" x 89" x 32.75", 605 gal. Sump Capacity'.

29.     On January 2, 2019, ET made a payment of $41,530.00 for invoice number 15222 to Honeybadger at WFB 2597. The beginning balance in this account on January 1, 2019 prior to this deposit was $1,932.37. On January 4, 2019, check number 1005 payable to Autumn Alyse Holdings in the amount of $30,000.000 was issued from WFB 2597. On January 7, 2019, this check posted as a deposit to the AUTUMN ALYSE ACCOUNT (WFB 3616).

11

30.     Evidence gathered during the investigation showed that from at least December 12, 2018 through June 21, 2019, THOMAS submitted, or caused to be submitted, 10 invoices for payment to ET Accounts Payable located in Dallas, TX for services/equipment purportedly provided by Honeybadger Industrial at the Terminals THOMAS supervised, in order to obtain funds from ET.

31.     Eight (8) payments for the invoices were ultimately transmitted from ET accounts in Dallas to the Honeybadger bank account WFB 2579 totaling $397,090.93.  ET management determined that all invoices submitted by THOMAS for Honeybadger were false and that none of the services referenced in the invoices were completed.

*LT Services*

32.     Evidence gathered during the investigation demonstrates that from at least August 14, 2019 through March 1, 2021, THOMAS submitted, or caused to be submitted, 92 invoices for payment to ET Accounts Payable located in Dallas, Texas for services/equipment purportedly provided by LT Services and Repair at the terminals THOMAS supervised, in order to obtain funds from ET.

33.     Thirty-Seven (37) payments for the purported services were transmitted from ET accounts in Dallas to the LT Services and Repairs account BOA 8980.  Interviews were conducted with the four terminal managers responsible for terminal operations at the locations where the invoices indicated the services were provided.  All four stated they had never heard of LT Services and Repairs, and that logs maintained at the terminals indicated no employee from LT

12

Services and Repairs had ever entered the respective terminals, and that the services referenced in the invoices were either never provided or were provided by another vendor.   In addition, none of the new equipment/machinery referenced in the invoices was ever provided.

34.     For example, invoice 14-6544 from LT Services and Repair dated August 1, 2019 requested payment due of $46,000.00. The invoice listed activity on July 10, 2019 'Crude Transfer Pump' with a description of 'API 676 PROGRESSING CAVITY PREV PUMP w/BLEED' for work done at ET's Hebert terminal. The invoice listed 'Trenton Thomas' as the Project Manager and was billed to trenton.thomas@energytransfer.com. Person 1 who supervised ET's Hebert terminal confirmed LT Services and Repair did not service, repair, deliver, or install a Crude Transfer Pump at the Hebert terminal in or around July or August 2019.

35.     Further, invoice number 17-6572 from LT Services and Repair dated August 2, 2019 requested payment due of $54,500.00. The invoice listed activity on July 23, 2019 'skid-mounted pump' with a description of 'FleetPAC Truck Injection System' for work done at ET's Hearne terminal. The invoice listed 'Trenton Thomas' as the Project Manager and was billed to trenton.thomas@energytransfer.com. Person 3 who supervised ET's Hearne terminal confirmed LT Services and Repair did not service, repair, deliver, or install a skid-mounted pump or perform any services on a FleetPAC Truck Injection System at the Hearne terminal in or around July 2019.

13

36.     On September 10, 2019, ET made payments of $46,000.00 and $54,500.00 for invoices 14-6544 and 17-6572 to LT Services and Repair at BOA 8980. The beginning balance in BOA 8980 on September 1, 2019 prior to these deposits was $3,000.00. On September 12, 2019, $75,000.00 was transferred from BOA 8980 to the AUTUMN ALYSE ACCOUNT (WFB 3616).  No other deposits were received between September 1, 2019 and the transfer on September 12, 2019.

37.     Further, an invoice 68-22365 from LT Services and Repair dated September 12, 2020 requested payment due of $44,946.00, listing activity 'Diesel Pump Installation' with a description of 'API 676 PROGRESSING CAVITY PREV PUMP w/ BLEED' for work done at ET's Hearne terminal. The invoice was billed to trenton.thomas@energytransfer.com. Person 3 again confirmed LT Services and Repair did not perform any services at the Hearne terminal in or around September 2020. Further, Person 3 stated the Hearne terminal has not had a new diesel pump installed since 2008.

38.     On March 12, 2021, after being questioned by ET's Compliance Representatives about the fraudulent LT Services invoices, THOMAS sent an email to his supervisor that same day concerning an LT Services and Repair invoice dated January 20, 2021 that Thomas had previously approved and was paid in the amount of $68,000.00. Trenton Thomas admitted in the email that the items included in this invoice were never received and that he would be seeking a credit from LT Services. On March 22, 2021, a withdrawal was made from BOA 8980 for

14

$68,015.00 and official check # 1651213075 was purchased payable to Energy Transfer Partners ATTN: Lakendra Kenney.

39.    On March 15, 2021, THOMAS submitted a resignation letter to ET, stating he resigned because he was "stealing time" from ET by working on other business interests while on the clock for ET.

40.    On March 22, 2021, THOMAS was questioned at his residence in Houston, TX by Person 4, Senior Security Director for ET, and Person 5, Lead Investigator for ET, about the payments to LT Services.  When confronted with the facts of the false invoices he approved for payment from LT Services and Repair, he stated "I want to accept responsibility and pay back what I owe." He offered to provide a bank check payment of $200,000.00.

41.    On March 23, 2021 Person 4 and Person 5 again met with Thomas at a hotel in Sugar Land, Texas. He reiterated that he was at fault and wanted to "pay back what I owe."  He claimed that he received a total of $325,000 in kick-back payments in exchange for giving work through LT Services and Repair to DYRAL THOMAS, his father, who he stated is one of the principals of LT Services.  These payments were paid to him for what THOMAS claimed was work, equipment or services provided to ET.  THOMAS admitted to establishing a non-approved contract vendor relationship with ET and LT Services and Repair. He stated that he knew this was unusual, and against ET's Code of Business Conduct, but wanted to use LT Services and Repair because it could provide services at a lower cost than other vendors he was using.  THOMAS maintained that the paid invoices were

15

legitimate, and the work that was invoiced was completed by LT Services and Repair.  Thomas offered to make a $50,000 payment to ET to "pay back what I owe."

*Analysis of Accounts*

42.     An analysis was conducted of all accounts controlled by TRENTON THOMAS. Numerous transfers were made between accounts. The source of the funding were forty-five payments to accounts controlled by THOMAS based on false invoices he submitted to Energy Transfer, Inc. totaling $3,089,514.64.

**Wells Fargo Account Number 7888982597 - Honeybadger Industrial Ltd. (WFB 2597)**

43.     WFB 2597 was opened on November 9, 2018 in the name of Honeybadger Industrial Ltd. by BONITA GREEN. From November 20, 2018 through November 26, 2019, eight (8) transfers totaling $397,090.93 were authorized by THOMAS for payment from the Energy Transfer bank account maintained at Wells Fargo Bank in Dallas, Texas and deposited to Honeybadger Industrial at WFB 2597. A single deposit was made to the account prior to the receipt of fraudulent funds in the form of a wire transfer on November 21, 2018 from Texas American Title in the amount of $45,000.00 that was immediately offset by a check to Marshall Law in the amount of $35,700.00 and other smaller withdrawals. The ending balance in the account on December 11, 2018 prior to the first fraudulent deposit was $1,297.83.

16

44.     From December 18, 2018 through November 26, 2019, seven (7) checks drawn from WFB 2597 were made payable to Autumn Alyse Holdings LLC, a company controlled by THOMAS and deposited at WFB 3616 totaling $264,844.00.  All seven checks were signed by GREEN.  Two of the checks referenced a property located at 4113 Lemac Drive in Houston, a property THOMAS purchased from BONITA GREEN and renovated.  There was one wire transfer for $2,870.00 from LT Services and Repairs on December 19, 2019.  The majority of the expenditures from the account appear to be for renovation work on the 4113 Lemac property.  In addition, there were several wire transfer credits from Beau Richard Homes totaling $126,373.22, a company THOMAS appeared to have utilized for the renovation of the property. The sole remaining source of funds to the account was a $4,000.00 check from Barrington Holdings, LLC on March 4, 2019 with 'Foundation' in the memo line.

45.     The account was closed on April 10, 2020.  This account was used to conceal, and funnel fraudulent proceeds obtained by THOMAS from Energy Transfer primarily to the WFB 3616, under the name Autumn Alyse Holdings, LLC.  The remaining balance in the account ($61,108.86) at closing was wired to an account at WFB 6682 under the same entity, Honeybadger Industrial, Ltd., renamed Harlie Alyse, Inc.

## Bank of America Account Number 488086148980 - L.T. Services and Repair (BOA 8980)

46.     The account was opened on July 1, 2019 with THOMAS listed as the owner and only signatory.  The account was funded with a $100 transfer from Card ending 1940 in the name of BONITA GREEN.  From August 20, 2019 through March 2, 2021, thirty-seven (37) transfers totaling $2,692,423.71 were authorized by THOMAS for payment from the Energy Transfer bank account maintained at Wells Fargo Bank in Dallas, Texas.

47.     From August 27, 2019 through March 9, 2021, thirty-two (32) wire transfers were made from BOA 8980 to an account in the name of Autumn Alyse Holdings (WFB 3616) at Wells Fargo Bank totaling $2,637,925.71.  BOA 8980 was closed on March 24, 2021 with a wire transfer to DYRAL THOMAS at First Lockhart National Bank in the amount of $2,941.67.

48.     With the exception of two transfers of funds from WFB 3616 in March of 2021 totaling $41,700, BOA 8980 was funded exclusively by the 37 wire transfers from the Energy Transfer/Sunoco accounts at Wells Fargo. This account was also used to funnel fraudulent proceeds from Energy Transfer to WFB 3616, Autumn Alyse Holdings, LLC.

## Wells Fargo Account Number 3982973616 - Autumn Alyse Holdings LLC (WFB 3616)

49.     The account was opened on September 12, 2017 in the name of Autumn Alyse Holdings, LLC with a $25 cash deposit.  The sole owner/signatory listed was TRENTON THOMAS.  The company was formed in the State of

18

Delaware on November 4, 2016. TRENTON THOMAS was listed as the Chairman and 100% owner on the application. On the application it listed the business description as 'holding company getting funding to invest in other businesses.'

50.     The primary source of funding for the account were checks/wire transfers from Honeybadger Industrial Ltd. (WFB 2597) and LT Services and Repairs (BOA 8980).  From December 18, 2018 – March 2, 2021, forty-one (41) deposits/credits were made totaling $2,903,769.71 - Seven (7) from WFB 2597 totaling $265,844.00 and thirty-four (34) from BOA 8980 totaling $2,637,925.71.

51.     The account was used to consolidate funds THOMAS fraudulently obtained from Energy Transfer that were transferred through WFB 2597 - Honeybadger Industrial, Ltd. and BOA 8980 - LT Services and Repairs, Inc. and redistribute to other individual and company accounts he controlled, which were ultimately used to purchase businesses, purchase/renovate properties and satisfy liens on his personal residence and other personal assets (vehicles). A total of $2,903,769.71 in fraudulent funds were deposited to the account.

52.     Due to the flow of funds in and out of the account, and the fact that personal funds were intermingled with fraudulently obtained funds, an intermediate account balance analysis was conducted.  Based on the records up to the date of the subpoena, the analysis determined that $136,816 of funds remaining in the account at the time of the analysis could be traced to proceeds of THOMAS' false invoice scheme.

19

### Wells Fargo Account Number 3826166682 - Harlie Alyse, Inc. (WFB 6682)

53.     The account was established on April 10, 2020 in the name of Harlie

Alyse, Inc. (Honeybadger Industrial, Ltd. refiled and changed its name to Harlie

Alyse, Inc. on December 2, 2019) with a $61,170.68 transfer of funds from WFB

2597 (Honeybadger Industrial, Ltd.).  THOMAS and BONITA GREEN are listed

as signers on the account.  THOMAS is also listed as the key executive with

control of the entity.  The business description provided was residential building.

The account was primarily funded by the transfer from WFB 2597 along with

several deposits from Rick Behr Construction.  $61,170.68 in proceeds traced from

the fraudulent invoices THOMAS submitted to ET were ultimately transferred to

this account.  Debits to the account consisted primarily of payments to a

construction contractor, transfers to Rick Behr Construction and a $50,000.00

transfer to WFB 3616 (Autumn Alyse Holdings, LLC).   Again, due to the

commingling of funds, an intermediate balance account balance analysis was

conducted. Based on the records up to the date of the subpoena, there was $329.30

of proceeds remaining in the account traceable to the fraudulent invoice scheme.

### Wells Fargo Account Number 5361531519 - HMC Retail LLC (WFB 1519)

54.     The account was established on April 16, 2019 under the name of

HMC Retail, LLC. THOMAS is listed as the sole owner with BONITA GREEN

and Vincent Green listed with signature authority.  The business description listed

on the application was retail franchising.  The account was initially funded with a

cashier's check for $10,000 from BONITA GREEN, a $10,000 cashier's check

20

from Vincent Green, along with a $10,000 transfer from THOMAS' personal line

of credit and a $5,000 transfer from his savings account and a $12,000 transfer

from his checking account.

55.     From June 24, 2019 through March 18, 2020 six transfers totaling

$168,018.45 from WFB 3616 Autumn Alyse Holdings were deposited to WFB

1519. These funds were obtained from the fraudulent invoices submitted by

THOMAS to ET and funneled through WFB 2597 (Honeybadger Industrial, Ltd.)

and BOA 8980 (LT Services and Repairs, Inc.). The account ultimately was used as

the daily operational account for THOMAS' Smoothie King franchise he acquired

located in Friendswood, Texas.

### Wells Fargo Account Number 5597840692 - HMC Retail LLC (WFB 0692)

56.     The account was established on August 28, 2020 under the name

HMC Retail, LLC. THOMAS was listed as the sole owner with BONITA GREEN

and Vincent Green listed as signatories.  The business description listed on the

application was retail franchising.  From October 30, 2020 through May 28, 2021,

thirteen (13) online transfers from WFB 3616 were authorized by THOMAS

totaling $514,109.92. On March 4, 2021, an online transfer from WFB 3691

(Autumn Alyse) for $25,000.00 was authorized by THOMAS. These funds

originated from a prior $50,000.00 transfer from WFB 3616 (Autumn Alyse

Holdings, LLC) to WFB 3691. From April 1, 2021 – May 25, 2021, nine transfer

deposits were made from WFB 1519 (HMC Retail LLC) totaling $13,386.00. With

the exception of the $500.00 opening deposit, all credits to the account

21

($552,496.29) can be directly traced as proceeds of the false invoice scheme orchestrated by THOMAS.

### Wells Fargo Account Number 9210512753 - Henlee Addison Properties LLC (WFB 2753)

57.     THOMAS opened the account in the name of Henlee Addison Properties, LLC on November 19, 2019.   AUTUMN ALYSE HOLDINGS, LLC was listed as the owner.  THOMAS and BONITA GREEN are listed as signers on the account.  THOMAS is also listed as the key executive with control of the entity. The business description provided was real estate investment.

58.     On January 23, 2020, a day before the first transfer of fraudulent funds, the account balance was $19,225.90. On January 24, 2020 a $55,000.00 transfer from WFB 2597 was deposited to the account. From January 30, 2020 through March 19, 2021 five transfers totaling $186,008.02 from WFB 3616 Autumn Alyse Holdings were deposited to WFB 2753. The total fraudulent funds deposited to the account were $241,008.02. These funds were obtained from the fraudulent invoices submitted by THOMAS to Energy Transfer and funneled through WFB 2597 (Honeybadger Industrial, Ltd.) and BOA 8980 (LT Services and Repairs, Inc.). Due to the flow of both clean and illegally derived funds, an intermediate balance analysis was conducted.  Based on the analysis of the records at the date subpoenaed, up to $18,318.73 in the account can be directly traced to funds obtained from the false invoice scheme.

**Wells Fargo Account Number 1216382885 - Trym Life, Inc.  (WFB 2885)**

59.     The account was established on December 19, 2019 under the name

Trym Life, Inc.  THOMAS was listed as the owner and sole signatory with the

business purpose being development of mobile applications for smart phones.

60.     The account had no funds prior to opening. On December 20, 2019 a

$12,500.00 transfer from WFB 9584 was deposited to the account. From December

20, 2019 through October 30, 2020 ten transfers totaling $287,668.04 from WFB

3616 Autumn Alyse Holdings were deposited to WFB 2885. The total fraudulent

funds deposited to the account were $300,168.04. These funds were obtained from

the fraudulent invoices submitted by THOMAS to Energy Transfer and funneled

through WFB 2597 (Honeybadger Industrial, Ltd.) and BOA 8980 (LT Services

and Repairs, Inc.). Due to the flow of both clean and illegally derived funds, an

intermediate balance analysis was conducted.  Based on the analysis of the records

at the date subpoenaed, $2,450.99 in funds remaining in the account can be directly

traced to funds obtained from the false invoice scheme.

61.     Primary debits from the account consisted of transfers to his personal

account along with payments to Wells Fargo credit card acct ending 4845

(hereafter WFCC 4845).  A review of WFCC 4845 show the expenses consisted

primarily of payments to Toptal.com, a company specializing in providing project

management and software development.

23

**Wells Fargo Account Number 5842510579 - Trenton J. Thomas (WFB 0579)**

62.      This personal checking account was originally opened by THOMAS in his own name in 2012.  On July 14, 2017, THOMAS added his wife, Janet to the account as a secondary joint owner.

63.      An analysis of the account showed minimal activity in the account prior to January 2019.  The balance in the account immediately prior to initial deposit of fraudulent funds on January 8, 2019, was $27.00.  From January 8, 2019 through February 24, 2021, twenty transfers totaling $548,247.20 from WFB 3616 Autumn Alyse Holdings were deposited to WFB 0579.  On August 27, 2019 and September 10, 2019, two additional transfers totaling $8,500.00 from BOA 8980 were deposited to WFB 0579.  The total fraudulent funds deposited to the account were $556,747.20. These funds were obtained from the fraudulent invoices submitted by THOMAS to Energy Transfer and funneled through WFB 2597 (Honeybadger Industrial, Ltd.) and BOA 8980 (LT Services and Repairs, Inc.). Due to the flow of both clean and illegally derived funds, an intermediate balance analysis was conducted.  Based on the analysis of the records at the date subpoenaed, $50,624.43 in funds remaining in the account can be directly traced to funds obtained from the false invoice scheme.

64.      Funds in the account were primarily for personal expenditures and to supplement his other personal accounts at Wells Fargo Bank. For example, on April 10, 2020, THOMAS transferred $169,000.00 from WFB 3616 and then wired $169,725.56 on April 13, 2020 to Mohela for payment on his student loan debt.

24

**Wells Fargo Account Number 8581629584 - Trenton J. Thomas (WFB 9584)**

65.      This personal checking account was originally opened by THOMAS in his own name on July 18, 2006.  On September 12, 2011, THOMAS added Janet Reyes (Janet Thomas) to the account as a secondary joint owner.

66.      An analysis of the account was conducted for the period December 15, 2017 through March 12, 2021.  The account was THOMAS's primary checking account.  Regular salary deposits from ET and Janet Thomas's primary employer were made throughout the review period.

67.      On December 18, 2018 the ending account balance was $1,296.65. The following day the first fraudulent transfer posted, December 19, 2018 from WFB 3616. From December 19, 2018 through March 23, 2021, fifty-one transfers totaling $802,879.82 from WFB 3616 Autumn Alyse Holdings were deposited to WFB 9584. From February 12, 2020 through March 22, 2021 four transfers totaling $24,330.36 from Henlee Addison Properties WFB 2753 were deposited to WFB 9584. On April 22, 2020 and December 28, 2020 two additional transfers totaling $16,585.60 from Trym Life WFB 2885 were deposited to WFB 9584. The total fraudulent funds deposited to the account were $843,795.78. These funds were obtained from the fraudulent invoices submitted by THOMAS to Energy Transfer and funneled through WFB 2597 (Honeybadger Industrial, Ltd.) and BOA 8980 (LT Services and Repairs, Inc.). Due to the flow of both clean and illegally derived funds, an intermediate balance analysis was conducted.  Based on the analysis of

25

the records at the date subpoenaed, $14,546.44 in funds remaining in the account can be directly traced to funds obtained from the false invoice scheme.

68.     The bulk of the expenditures appear to be personal expenditures and payments on several credit cards including Applecard, JP Morgan Chase, American Express and Barclay credit cards.

### JPMC Account Number 633109852 - Strong Visuals Company LLC (JPMC 9852)

69.     This business checking account was opened on July 30, 2020 in the name of Strong Visuals Company, LLC by Artis Ira Armstrong III and THOMAS. Both were listed on the business signature card as members.  An analysis was conducted for the period July 30, 2020 through May 31, 2021.  The account was opened with a $1,600.00 cash deposit and also received what appeared to be business receipts from MCA Communications ($18,000.00) and Rice University ($1,650.00).  On September 3, 2020 the ending account balance was $7,096.85 prior to the deposit of the fraudulent transactions. On September 8, 2020 and April 4, 2021 two transfers posted to the account totaling $13,500.00. These funds were obtained from the fraudulent invoices submitted by THOMAS to Energy Transfer and funneled through WFB 2597 (Honeybadger Industrial, Ltd.) and BOA 8980 (LT Services and Repairs, Inc.).  Due to the flow of both clean and illegally derived funds, an intermediate balance analysis was conducted.  Based on the analysis of the records at the date subpoenaed, $10,379.04 in funds remaining in the account can be directly traced to funds obtained from the false invoice scheme.

26

### JPMC Account Number 800233785 - Bonita Y. Green (JPMC 3785)

70.    This personal checking account was opened on November 12, 2008 by BONITA GREEN in her name. An analysis of JPMC 3785 was conducted from January 4, 2017 through December 9, 2019. On November 22, 2019, a transfer of $46,000.00 from WFB 3616 (Autumn Alyse Holdings, LCC) was deposited to the account. These funds were traceable to the fraudulent invoices submitted by THOMAS.  On December 9, 2019 JPMC was closed and the balance of funds in the account, $58,607.00 was transferred to JPMC 6769.

### JPMC Account Number 586726769 - Bonita Y. Green (JPMC 6769)

71.    This personal checking account was opened on December 9, 2019 by BONITA GREEN in her own name.  The account was funded by a $58,607 transfer from BONITA GREEN's checking account (JPMC 3785), which was closed on December 9,⁚ 2019.  An analysis of JPMC 3785 was conducted from January 4, 2017 through December 9, 2019.  Based on the analysis, $46,000.00 of the $58,607.00 transfer to JPMC 6769 can be directly traced to proceeds of the false invoice scheme. Further, On March 18, 2020, $16,000.00 was transferred from WFB 2753 (Henlee Addison Properties) to JPMC 6769 that can be traced to the false invoice scheme. A total of $62,000.00 in funds traceable to the false invoices submitted by THOMAS. Due to the flow of both clean and illegally derived funds, an intermediate balance analysis was conducted.  Based on the analysis of the records at the date subpoenaed, $31,930.95 in funds remaining can be directly traced to funds obtained from the false invoice scheme.

27

### American Express High Yield Savings Account XXXX7616 – Trenton Thomas (AE 7616)

72.      AE 7616 is a savings account in the name of TRENTON THOMAS.

THOMAS opened the account on July 18, 2018. Based on the intermediate balance

analysis conducted on WFB 3616 investigators identified a $100,000.00 transfer

from WFB 3616 to WFB 9584 on December 20, 2019 funded by the fraudulent

invoice scheme. Further on this same day, December 20, 2019, $100,000.00 was

subsequently transferred from WFB 9584 to an American Express High Yield

savings account.

### Charles Schwab Account Number 6242227 – Trenton and Janet Thomas (CS 2274)

73.      CS 2274 is a brokerage account in the name of TRENTON and Janet

THOMAS.  THOMAS opened the account December 20, 2019.  On December 27,

2019, $30,000.00 in funds were transferred from AE 7616 to CS 2274. The

$30,000.00 in funds were utilized to purchase $30,000.00 in Schwab S&P 500

Index Funds. Based on the analysis of the records at the date subpoenaed, no other

funds have been deposited or withdrawn from the account. Income generated by the

investments has been reinvested in additional shares of the same funds. Based on

the review of the account, all funds deposited to the account are traceable to the

fraudulent invoice scheme.

### TD Ameritrade Account Number 493-938261 – Trenton Thomas (TDA 8261)

74.      TDA 8261 is a brokerage account in the name of TRENTON

THOMAS and Janet Thomas.  THOMAS opened the account October 13, 2018.

On October 21, 2019, $10,000.00 in funds were transferred from WF 9584 to TDA

8261. Prior to the transfer, the value of the account at the end of September 30, 2019 was $461.29, consisting of $47.45 funds on deposit and one share each of Facebook Inc. Class A common stock, Target Corp., and Vanguard Sm. Cap. Val. ETF. On December 31, 2019, $50,000.00 in additional funds were transferred from AE 7616 to TDA 8261. Based on the analysis of the records at the date subpoenaed, no other funds have been deposited or withdrawn from the account. Based on the review of the account, $60,000 in funds deposited to the account were traceable to the fraudulent invoice scheme. The entire balance of assets in the account, with the exception the assets held on September 30, 2019 valued at $461.29, were traceable to the fraudulent invoice scheme.

### Vanguard Account Number 26215242 – Trenton Thomas and Janet Thomas (VAN 5242)

75.     VAN 5242 is a brokerage account in the name of TRENTON THOMAS and Janet Thomas. The account was opened on or before October 22, 2019. On October 22, 2019, $10,000.00 in funds were transferred from WF 9584 to VAN 5242. Based on the intermediate balance analysis conducted on WF 9584, then entire $10,000.00 in funds were traceable to the fraudulent invoice scheme. On October 23, 2019, $10,000.00 in funds were also transferred from WF 9584 to VAN 5242. Based on the intermediate balance analysis conducted on WF 9584, $8.533.31 of the $10,000.00 transfer was directly traceable to the fraudulent invoice scheme. On December 27, 2019, $20,000.00 in funds were transferred from AE 7616 to VAN 5242. Based on the analysis of AE 7616, the entire balance of the transfer of $20,000.00 was traceable to the fraudulent invoice scheme. No

29

subsequent deposits or withdrawals have been identified in the records subpoenaed to date. Of the $40,000.00 in funds deposited into the brokerage account, at least $38,710.02 can be directly traced to the fraudulent invoice scheme.

76.     A summary flow chart is shown below depicting the movement of the monies from ET to Honeybadger Industrial and LT Services and Repairs and to companies/accounts controlled by THOMAS along which will serve as the basis for the seizure of funds/assets accumulated as a result of the false invoice scheme orchestrated by THOMAS.

**Chart Depicting Flow of Funds from Energy Transfer, Inc.**



## CONCLUSION

Based upon my training and experience, and the information provided in this Affidavit, I respectfully submit that there is probable cause to believe that from at least in or around April 2020 to September 2020, within this District and elsewhere, defendant TRENTON THOMAS and BONITA GREEN committed violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1956(a)(1)(B)(i) (Knowing Engaging in Financial Transactions with Proceeds from a Specified Unlawful Activity to conceal, disguise, location, source, ownership or control), 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) and 18 U.S.C. 1956(h) (Conspiring to Commit 1956(a)(1)(B)(i), 1957).

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Special Agent Craig Clotfelter
Internal Revenue Service-Criminal Investigation

Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 41(d)(3)

32

Sworn to and subscribed before me this  7th  day of October 2021.

The Honorable Judge Renee Toliver
United States Magistrate Judge

**Attachment A**

1.  Wells Fargo Bank ("Wells Fargo") account number 3982973616 held in the name of Autumn Alyse Holdings LLC, up to and including the sum of one hundred thirty-six thousand, eight hundred sixteen dollars ($136,816.00);

2.  Wells Fargo Bank ("Wells Fargo") account number 3826166682 held in the name of Harlie Alyse, Inc., up to and including the sum of three hundred twenty-nine dollars and thirty cents ($329.30);

3.  Wells Fargo Bank ("Wells Fargo") account number 5597840692 held in the name of HMC Retail LLC, up to and including the sum of five hundred fifty-two thousand, four hundred ninety-six dollars and twenty nine cents ($552,496.29);

4.  Wells Fargo Bank ("Wells Fargo") account number 921512753 held in the name of Henlee Addison Properties LLC, up to and including the sum of eighteen thousand, three hundred eighteen dollars and seventy-three cents ($18,318.73)

5.  Wells Fargo Bank ("Wells Fargo") account number 1216382885 held in the name of Trym Life, Inc., up to and including the sum of two thousand, four hundred fifty dollars and ninety-nine cents ($2,450.99);

6.  Wells Fargo Bank ("Wells Fargo") account number 5842510579 held in the name of TRENTON J. THOMAS, up to and including the sum of fifty thousand, six hundred twenty-four dollars and forty-three cents ($50,624.43);

7. Wells Fargo Bank ("Wells Fargo") account number 8581629584 held in the name of Trenton J. Thomas, up to and including the sum of fourteen thousand, five hundred forty-six dollars and forty-four cents ($14,546.44);

8. JP Morgan Chase bank ("JPMC") account number 633109852 held in the name of Strong Visuals Company LLC, up to and including the sum of ten thousand, three hundred seventy-nine dollars ad four cents ($10,379.04);

9. JP Morgan Chase bank ("JPMC") account number 586726769 held in the name of BONITA Y. GREEN, up to and including the sum of thirty-one thousand, nine hundred thirty dollars and ninety-five cents ($31,930.95);

10. Any and all funds on deposit, securities held or other investment instruments located within Charles Schwab brokerage account number 62422274 in the name of TRENTON and JANET THOMAS;

11. Any and all funds on deposit, securities held or other investment instruments located within TD Ameritrade brokerage account number 493-938261 in the name of TRENTON THOMAS, and;

12. Any and all funds on deposit, securities held or other investment instruments located within Vanguard brokerage account number 26215242 in the name of TRENTON THOMAS.

# UNITED STATES DISTRICT COURT
for the

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In the Matter of the Seizure of | ) |
| | ) |
| FUNDS IN VANGUARD | )   Case No. 21-mj-1723 |
| ACCOUNT NO. 26215242 | ) |
| | ) |
| | ) |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the Eastern District of Pennsylvania and elsewhere be seized as being subject to forfeiture to the United States of America.  The property is described as follows:

Any and all funds on deposit, securities held or other investment instruments located within Vanguard brokerage account number 26215242 in the name of Trenton Thomas.

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before    November 24, 2021
                                                                                            *(not to exceed 14 days)*

X in the daytime 6:00 a.m. to 10:00 p.m.     ❑  at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to
            Duty Magistrate Judge.
            *(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❑ for_____days (not to exceed 30)     ❑ until, the facts justifying, the later specific date of_____.

Date and time issued:    November 10, 2021 10:35pm              /s/David Strawbridge
                                                                      *Judge's signature*

City and state:    Philadelphia, PA                              HON. DAVID R. STRAWBRIDGE
                                                                    *Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| Return | | |
|---|---|---|
| Case No.: 21-MJ-1723 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken:

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                                                   _____
                                                         *Executing officer's signature*

                                                   _____
                                                             *Printed name and title*